SABERS, Justice.
[¶ 1.] Michael Sweedland (Sweedland) appeals the circuit court’s denial of his *410 motion to suppress evidence obtained from the search of his vehicle. We reverse.
Facts
[¶ 2.] On the morning of February 13, 2005, Jay Pearson (Pearson) was cleaning one of the rooms in the Budget Host Jackpot Inn Motel in Deadwood, South Dakota. During that time, Pearson smelled what he believed to be marijuana smoke emanating from two rooms across the hallway. Pearson witnessed four young males, whom he believed to be the occupants of the rooms, leaving the motel. Pearson reported this information to law enforcement.
[¶ 3.] The Pearson information was relayed over radio by police dispatch. A summary by the dispatcher is as follows:
Manager of the Budget Host advised four males just left the motel, headed into town, driving Montana License 29A8307, maroon 2000 4-door Oldsmobile. The hallway smells like marijuana, as well as the two rooms they were staying in.
Officer Alex Hamann (Hamann), a Deadwood City Police Officer, was on duty that day and heard the dispatch. Approximately three to five minutes after receiving the dispatch, Hamann identified a vehicle that matched the description given in the dispatch. Sweedland was driving the vehicle. Michael Huggins, Joseph Teasdale, and Jason Morrow were passengers in the Sweedland vehicle.[1]
[¶ 4.] Hamann witnessed no traffic violations, but decided to stop the car to investigate the information relayed by dispatch. Sweedland pulled into a parking lot and stopped his vehicle upon seeing Hamann’s emergency lights.[2] Hamann then approached the driver’s side of the vehicle and asked Sweedland for his driver’s license, proof of insurance, and vehicle registration. Sweedland provided the requested information and was asked to exit the vehicle and accompany Hamann to his patrol car.
[¶ 5.] Hamann performed a pat down of the outside of Sweedland’s clothes before the two entered the patrol car. Nothing was found as a result of this search. Once the two had been seated in the car, Hamann began questioning Sweedland. Hamann first communicated the information that was received by dispatch and asked Sweedland why anyone would “say something like that.” Sweedland replied that he “did not know.” Hamann then asked Sweedland if he had any marijuana in his car, to which Sweedland answered in the negative. At this point, Hamann asked Sweedland for consent to search the vehicle. Sweedland asked Hamann what “grounds” he had to conduct the search. Hamann replied that he wanted to “follow through” with the complaint but that it was “up to [Sweedland].” Sweedland again refused to give consent stating that there were “no grounds” for a search and that he and his friends had not done anything unlawful. Hamann told Sweedland that he understood, but if Sweedland and his friends had truly done nothing illegal, there would be no reason to be concerned about a search. At this point, Sweedland told Hamann that he was tired and wanted to “get going.” Hamann then told Sweed-land to remain in the patrol car. At no time during this encounter did Hamann witness any signs of impairment or behavior that enhanced his suspicions.[3]
*411 [¶ 6.] Hamann exited the patrol car and approached the driver’s side door of Sweedland’s vehicle. He asked the three passengers to exit the vehicle via the passenger doors. After the passengers had complied, Hamann put his head inside the car via the driver’s side window and looked at the interior of the vehicle. Before Hamann began questioning the three passengers, he turned off the outside microphone of his patrol car.[4] He obtained driver’s licenses from each of the three passengers and returned to his patrol car to use the radio. The passengers remained standing to the right of the Sweed-land vehicle.
[¶ 7.] None of the three passengers had outstanding warrants, but one had a suspended driver’s license. Before Ham-ann could return the passengers’ licenses, he was confronted by Officer Mertens (Mertens) who arrived to assist Hamann. Hamann told Mertens that he was unable to get Sweedland to consent to a search of the vehicle. Mertens suggested that they perform pat downs on the outer clothing of the three passengers. He did not mention any safety concerns justifying the pat down, and Hamann did not believe his safety was threatened at that time. At no time did Hamann witness any signs of impairment or other behavior on the part of the three passengers that would have increased his suspicions beyond that of the initial dispatch.
[¶ 8.] Hamann testified that upon returning to the three passengers, he inquired whether he could perform the pat downs. According to Hamann, the three acquiesced. One of the passengers, Joseph Teasdale, produced a pipe and some screens from his right coat pocket. The pipe and screens appeared to be brand new and did not contain any marijuana residue. Hamann then searched the area in the vehicle where Teasdale had been seated. Hamann found a wooden box containing marijuana residue. The officers proceeded with a search of the entire vehicle. A search of the vehicle’s interior produced two to three bags of marijuana and eight to ten pieces of paraphernalia used to smoke marijuana. A search of the vehicle’s trunk produced eleven bricks of marijuana.
[¶ 9.] Sweedland and the three passengers were arrested and charged with various drug related offenses. All four defendants made motions to suppress the evidence obtained as a result of the stop, search, and seizures. The motions were consolidated and a hearing was held on April 4, 2005.
[¶ 10.] The circuit court issued a written decision denying the motions. The court held that the three passengers did not have standing to challenge the search as they had no legitimate expectation of privacy in Sweedland’s vehicle. As to the passenger pat downs, the court found that “there were no specific, reasonable observations by the officer which would support a conclusion that any of the defendants *412 were armed and dangerous.” In addition, the court noted, “there is no evidence that any of the defendants knowingly and intelligently consented to a search of their persons.” The court also found that nothing transpired between the stop and the search that “serve[d] as circumstantial evidence corroborating the report from the motel.” However, the court denied Sweedland’s motion, writing:
[UJnder the totality of the circumstances test the officer was able to verify the report of the informant, shortly after it was made, in respect to the description, state of registration, and license number of the motor vehicle as well as its direction of travel and the number and sex of occupants. Ergo, I conclude as a matter of law that the officer had probable cause that either the vehicle and/or its occupants possessed contraband and that he was legally entitled to conduct a warrantless search of the vehicle and its occupants under the automobile exception to the search warrant requirements of the Fourth Amendment to the United States Constitution and Articles VI, § 11 of the South Dakota State Constitution.
[¶ 11.] The passengers were tried and convicted of drug related offenses. They did not appeal. Sweedland was convicted of violating SDCL 22^42-7 and 22-3-3, which prohibit the possession of more than one pound of marijuana with the intent to distribute. He raises the following issue on appeal:
Whether there was sufficient corroboration of the informer’s tip to permit a warrantless search of Sweedland’s vehicle.[5]
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
Standard of Review
[¶ 12.] Our standard of review is well settled:
A motion to suppress based on an alleged violation of a constitutionally protected right is a question of law reviewed de novo. We review findings of fact under the clearly erroneous standard. Once the facts have been determined, however, the application of a legal standard to those facts is a question of law reviewed de novo.
State v. Chavez, 2003 SD 93, ¶ 13, 668 N.W.2d 89, 95 (quoting State v. Hodges, 2001 SD 93, ¶ 8, 631 N.W.2d 206, 209) (internal citations omitted).
Decision
[¶ 13.] The Fourth Amendment of the United States Constitution and Article VI, Section 11 of the South Dakota Constitution protect individuals from unreasonable searches and seizures.[6] “As a rule, this protection has been interpreted as holding ‘a seizure of personal property ... per se unreasonable ... unless it is accomplished pursuant to a judicial warrant issued upon probable cause[.]’” State v. Ballard, 2000 SD 134, ¶ 10, 617 N.W.2d 837, 840 (quoting United States v. Place, 462 U.S. 696, 701, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983)). The warrant requirement is not without exceptions. Specifically, the automobile exception excuses law enforcement from obtaining a warrant when the officer *413 has probable cause to search the vehicle. Id. n. 2 (citing Wayne R. LaFave, Search and Seizure § 7.1(a) at 433 (3d ed. 1995)).
[¶ 14.] Because the Fourth Amendment has a “strong preference” for searches conducted pursuant to a warrant, law enforcement is afforded no deference when relying on an exception to justify a warrantless intrusion. State v. Raveydts, 2004 SD 134, ¶ 8, 691 N.W.2d 290, 293; State v. Luxem, 324 N.W.2d 273, 279 (S.D.1982). When the state is relying on an exception to the warrant requirement, its burden is as follows:
Under the Fourth Amendment of the United States Constitution and Art. VI, 11 of the South Dakota Constitution a warrantless search and seizure is per se unreasonable unless it falls within one of the jealously and carefully drawn, strictly circumscribed exceptions to the warrant requirement. A heavy burden is on the State to prove such exception.
Luxem, 324 N.W.2d at 279 (citing Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979)) (internal quotations omitted).
[¶ 15.] As mentioned above, the circuit court ruled that Hamann had probable cause to search Sweedland’s vehicle at the time Hamann made the stop. The court based its ruling on Hamann corroborating the vehicle description, direction of travel, license plate number, and the number and gender of the occupants with the tip received by dispatch. We have had several occasions to. examine whether a tip provides reasonable suspicion for police to stop a vehicle. See State v. Cuny, 534 N.W.2d 52, 54 (S.D.1995) (explaining a number of cases where the issue turned on whether an anonymous tip by a private citizen provided reasonable suspicion for a stop); State v. Scholl, 2004 SD 85, ¶ 7, 684 N.W.2d 83, 86 (listing numerous cases involving vehicle stops based upon informant tips). In Scholl, we explained:
An informant’s tip may carry sufficient indicia of reliability to justify a [vehicle] stop even though it fails to rise to the level of the probable cause needed for an arrest or search warrant. All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity.
Id. ¶ 6 (citing State v. Olhausen, 1998 SD 120, ¶ 7, 587 N.W.2d 715, 717-718) (internal quotations omitted). Ultimately, we held that reasonable suspicion to effectuate a stop occurred when a tip conveyed the make, model, license number, and location of Scholl’s vehicle, as well as the fact that Scholl had stumbled badly out of a bar and had difficulty entering his vehicle. Scholl, 2004 SD 85, ¶ 17, 684 N.W.2d at 89.
[¶ 16.] In Graf v. Dept. of Commerce Regulation, we held that an anonymous tip was insufficient to provide reasonable suspicion for a vehicle stop. 508 N.W.2d 1, 3-4 (S.D.1993). The tip provided the make, model, and license plate number of Grafs vehicle, along with a statement that Graf was possibly intoxicated. Id. The officer who stopped Graf did not witness any erratic driving. It was due to the vague nature of the tip and the officer’s failure to corroborate additional facts beyond the make and license plate number of the vehicle that the majority held the tip insufficient to provide reasonable suspicion. Id.
[¶ 17.] The United States Supreme Court addressed this issue in Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). In White, the police received an anonymous telephone tip that White would be leaving her apartment at a particular time in a particular car and that she would be in possession of cocaine. 496 U.S. 325 at 327, 110 S.Ct. at 2414, 110 L.Ed.2d 301. The tip also specified White’s destination, the amount of cocaine *414 she would be carrying, and the type of bag she would be using to conceal the cocaine. Id. Law enforcement corroborated most of that information. 496 U.S. at 331, 110 S.Ct. at 2417, 110 L.Ed.2d 301. The Court held that although it was a “close case,” the tip provided law enforcement with reasonable suspicion to stop. White’s vehicle. 496 U.S. at 332, 110 S.Ct. at 2417, 110 L.Ed.2d 301. The Court also noted that:
Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.
496 U.S. at 330, 110 S.Ct. at 2416, 110 L.Ed.2d 301.
[¶ 18.] The question here is not whether the tip and corroboration that followed constituted reasonable suspicion to stop Sweedland’s vehicle, but whether it created probable cause to conduct a search of the vehicle.[7] Although the above mentioned cases aid our analysis, the state faces a greater burden in the present case.
[¶ 19.] In Raveydts, we held that two anonymous tips alleging illegal drug activity in an apartment were sufficient to provide probable cause to obtain a search warrant. 2004 SD 134, 691 N.W.2d 290. The tips provided information that the defendant was a narcotics user and that she continually had people coming and going from her apartment. The tip also mentioned that the visitors were narcotics users and that the tipster had witnessed an individual exit the apartment in possession of narcotics. Id. ¶ 10. One of the informants lived below the defendant and alleged smelling marijuana smoke. Id. ¶ 3. Finally, the informants provided license plate numbers of some of the individuals who had been frequenting the apartment. Id.
[¶ 20.] Law enforcement identified the owners of the license plate numbers supplied by the callers. Id. ¶ 4. Several of the individuals had been involved in drug violations and one had been involved in large marijuana sales throughout the area. Id. Based on that corroboration and information, a circuit judge issued a search warrant for the defendant’s apartment. Id. ¶ 5. In holding that there was probable cause to issue the search warrant, the majority placed emphasis on the fact that a magistrate had made the probable cause determination. Id. ¶ 7. The concurrence agreed, noting, “far more constitutional violations are likely to come from intrusions into homes and vehicles by officers without search warrants, under claimed exceptions to the search warrant requirement[.]” Id. ¶ 19 (Sabers, J., concurring).
[¶21.] The inquiry into probable cause is whether the “information provided to the judge was sufficient for a common sense decision that there was a fair probability the evidence would be found on the person or at the place to be searched.” Id. ¶ 7 (citing Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). Two elements were labeled as “crucial” in determining whether an anonymous informant’s tip provided a substantial basis for the issuing court’s finding of probable cause. Id. ¶ 11. “First, an explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first hand, entitles the informant’s tip to greater weight than might otherwise be the case.” Id. (citing *415 Gates, 462 U.S. at 234, 103 S.Ct. at 2330, 76 L.Ed.2d 527) (internal quotations omitted). “Second, the extent to which the tip is corroborated by the officer’s own investigation is important.” Id. ¶ 12. In Gates, the United States Supreme Court outlined many of its prior decisions concerning whether tips are sufficient to provide probable cause. 462 U.S. 213, 241-42, 103 S.Ct. 2317, 2334, 76 L.Ed.2d 527. The Court summarized the cases, stating:
[o]ur decisions applying the totality-of-the-cireumstances analysis ... have consistently recognized the value of corroboration of details of an informant’s tip by independent police work.
Id. at 241, 103 S.Ct. 2317.
[¶ 22.] Before these principles are applied, it is important to note that Hamann did not receive a warrant to search Sweed-land’s vehicle. The State is relying on one of the exceptions to the warrant requirement. Thus, we will apply a heavy burden to the State’s assertion. As stated by the United States Supreme Court:
The essential protection of the warrant requirement of the Fourth Amendment, as stated in Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), is in requiring that the usual inferences which reasonable men draw from evidence be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.
Gates, 462 U.S. at 240, 103 S.Ct. at 2333, 76 L.Ed.2d 527 (internal quotations omitted).
[¶ 23.] The record reflects that neither of the two crucial elements was met by the informant’s tip. First, the informant did not observe any wrongdoing on the part of the four men. He did not see them using drugs. Nor did he see them in possession of drugs or paraphernalia. The lack of first hánd observance is inextricably intertwined with the informant’s failure to give an explicit and detailed account of the event. The only thing the informant conveyed to dispatch was that he had smelled marijuana smoke in the hallway and that the two rooms the men had occupied smelled of marijuana. This does not constitute an explicit and detailed account of the event..
[¶ 24.] The only thing Hamann corroborated at the time of the stop was the license plate number, direction of travel, and gender of the four occupants. He did not witness any erratic driving. Nor did he ascertain whether the men had stayed at the motel, what rooms if any, they had occupied, who had been occupying the adjacent rooms, and whether the men showed any signs of impairment or smelled of marijuana smoke. Thus, at the time of the stop, Hamann had corroborated only innocuous facts. The information provided coupled with the corroboration of Hamann falls short of the standard set forth in Raveydts and did not amount to a “fair probability evidence would be found [on the four men] or in [Sweedland’s vehicle].” 2004 SD 134, ¶ 7, 691 N.W.2d 290 at 293 (citing Gates, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d 527). As a result, the circuit court erred in holding the tip, standing alone, provided probable cause to search the vehicle at the time of the stop.
[¶ 25.] At most, Hamann had reasonable suspicion to stop Sweedland’s vehicle and investigate the informant’s claim as provided in Scholl, White, and Cuny. The informant’s tip alleged marijuana use, a class one misdemeanor under SDCL 22-42-15. The tip did not allege the four men were engaged in drug trafficking. A reasonable police officer might conclude that one who had been using marijuana shortly before a stop might also possess marijuana. However, Hamann could not infer *416 possession without first corroborating the allegation of marijuana use.
[¶ 26.] The information given to dispatch was that marijuana smoke could be smelled in the rooms and in the hallway. Hamann stopped Sweedland’s vehicle within three to five minutes after the dispatch. However, Hamann did not smell marijuana in Sweedland’s vehicle or on any of the individuals. He testified that none of the four men exhibited any signs of impairment and, as a result, he did not conduct any sobriety tests. Additionally, Hamann provided no testimony that any of the four men acted nervous or in a manner that enhanced his suspicions. Because Ham-ann’s investigation failed to corroborate the informant’s allegations, Hamann did not have probable cause to search the vehicle and Sweedland should have been free to leave.[8]
[¶ 27.] We agree with the circuit court that nothing after the stop served as circumstantial evidence corroborating the report from the motel. However, the court erred in holding that probable cause existed at the time of the initial stop. Sweed-land’s motion to suppress should have been granted.
[¶ 28.] Reversed.
[¶ 29.] MEIERHENRY, Justice, concurs.
[¶ 30.] KONENKAMP, and ZINTER, Justices, concur in result.
[¶ 31.] GILBERTSON, Chief Justice dissents.

.Hamann did not know the identities of the four individuals at this time, as that information was not provided by dispatch.

.The stop and the search were all captured on video and are part of the record for this appeal.

.By this time Cindy Rosche, a city ordinance officer, arrived at the scene to assist Hamann.

. The initial stop and subsequent questioning of Sweedland are audio recorded because Hamann had the outside and inside microphones of his police car operating. As mentioned, Hamann turned off the outside microphone before questioning the passengers. No dialogue is available between Hamann and the passengers from this point forward. Nor are there any video images of the exchange between Hamann and the passengers because the patrol car is situated so that one can only see to the left of the vehicle. Hamann did leave the interior microphone on in his patrol car in an effort to record incriminating statements from Sweedland. The only audible statements by Sweedland can be heard after the search begins. They include an occasional curse and a rhetorical “why the f* * * did we have to come to Deadwood?” Thus, the facts from this point forward are based on Hamann's testimony at the suppression hearing.

. Sweedland does not challenge whether there was reasonable suspicion for Hamann to stop his vehicle.

. The Fourth Amendment to the United States Constitution provides:

. We note that the tip was not anonymous. Although it is not clear if Pearson gave his name to dispatch, he did give his job title and place of employment.

. Hamann’s subjective motives do not control the issue of probable cause. However, the record is clear that Hamann knew he did not have probable cause because he repeatedly asked Sweedland for consent to conduct a search. Moreover, Hamann did not pat down the three passengers for safety reasons, but as a result of Sweedland's refusal to consent.