#24202-a-RWS

**2007 SD 48**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                                   Plaintiff and Appellant,

  v.

TRAVIS LABINE,                                   Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE MAGISTRATE COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE MICHELLE K. PERCY
Magistrate Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

STEVEN BLAIR
Assistant Attorney General
Pierre, South Dakota                                   Attorneys for plaintiff
                                                        and appellant.


G. MATTHEW PIKE
Lawrence County Public
Defender's Office
Deadwood, South Dakota                                   Attorney for defendant
                                                        and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 19, 2007

OPINION FILED **05/02/07**

#24202

SABERS, Justice

[¶1.]    Travis Labine (Labine) was indicted for possession of marijuana in a moving vehicle. After a magistrate judge granted Labine's motion to suppress, the State petitioned for a discretionary appeal, which we granted. We affirm.

**FACTS**

[¶2.]    On March 29, 2006, the Spearfish Police Department was conducting a school zone speed saturation patrol near Jackson Boulevard and 10th Street in Spearfish, South Dakota. The officers were conducting this operation on foot, their patrol cars parked some distance away. One officer would radar the speeding car and relay the information to a second officer, who would flag down the speeding vehicle and issue a citation. It was during this operation that the officers clocked a blue Cadillac going thirty-nine miles per hour in the fifteen miles per hour school zone. Labine was a passenger in this vehicle.

[¶3.]    Officer Matthew Symonds (Officer Symonds) signaled to the Cadillac to pull over. Officer Symonds made contact with the driver, obtained his information from his driver's license, and began issuing a citation for speeding. He did not smell any illegal substances at this time. During this time, South Dakota Highway Patrolman Brian Swets (Trooper Swets) parked his squad car near the other police vehicles and approached the blue Cadillac. According to his testimony at the suppression hearing, he did not stop because he witnessed any criminal activity, nor was he summoned to the scene by the other officers. He testified he was passing by and stopped to visit.

-1-

[¶4.]		At this point, the testimony of Trooper Swets and Officer Symonds diverges.  Trooper Swets testified that he noticed the blue Cadillac had illegal mirrorized tint on its windows.  As he approached the vehicle, he asked Officer Symonds if that violation had been addressed.  When Officer Symonds informed him that it had not, he asked Officer Symonds if it would be okay if he talked with the occupants of the vehicle about it.  However, Officer Symonds testified that Trooper Swets did not speak with him prior to talking to the vehicle occupants.  Instead, Trooper Swets went directly to the passenger side and began speaking with the occupants.

[¶5.]		When Trooper Swets approached the vehicle, he claimed he smelled the odor of burnt marijuana and alcohol.  According to Trooper Swets' and Labine's testimony, he asked whether there was any reason why his narcotics detection dog would smell the odor of an illegal drug coming from the vehicle, even though the drug dog was in his vehicle a half a block away.[1]  Furthermore, he smelled alcohol emanating from Labine, so he asked him to step out of the car and to see his identification.

[¶6.]		Labine appeared nervous to both Trooper Swets and Officer Symonds.  When questioned, Labine informed the officers that he was out on bond.  Labine was asked if he had any illegal drugs on his person, to which he replied no.

[¶7.]		Here again, Officer Symonds' and Trooper Swets' testimony differs.  Trooper Swets claims he asked Labine for consent "to search his person," and

---

1.	The record indicates that the drug dog was not employed and had no opportunity to alert.

according to Trooper Swets, Labine consented to the search of his person. Labine was informed by Officer Swets that "he didn't have to allow [a] search [of] his person], and he could deny [the] search if he chose to do so." According to Trooper Swets, Labine consented again. Trooper Swets immediately went to Labine's pockets, felt outside the pocket for any sharp objects and then pulled out a baggie from within the pocket containing less than two ounces of marijuana.

[¶8.]       Officer Symonds testified that Labine and Trooper Swets were at the rear of the vehicle so he heard the conversation between them. According to Officer Symonds, Trooper Swets asked numerous times, "It's all right if I pat you down?" He also testified that the pat-down Trooper Swets conducted was "more in depth" than the pat-down search he was trained to conduct.

[¶9.]       Similarly, Labine stated that Trooper Swets asked if he could "pat-down your person." According to Labine, Trooper Swets asked if he could conduct a "pat-down" twice. Furthermore, he thought he was consenting to nothing more than a pat-down for weapons.

[¶10.]      After the suppression hearing, the magistrate suppressed the evidence. In its memorandum opinion, it explained that it "struggles because based upon Trooper Swets testimony he acted completely within the scope of the law. However, consideration of the testimony of the other witnesses gives the Court reasonable doubt." The court decided the State did not meet its burden of proof and ruled that all evidence "seized from a pat-down search not prompted by a reasonable belief of present danger should be suppressed."

#24202

[¶11.] The State made a motion to reconsider, but the magistrate suppressed the evidence. The State proposed findings of fact and conclusions of law, which were rejected. The magistrate then issued findings of fact and conclusions of law, which did not expressly incorporate the memorandum opinion. Thereafter, the State petitioned this Court for permission to take a discretionary appeal. The petition listed four issues.[2] We granted the petition, and the State appealed the following issues:

1. Whether the trial court erred in applying the wrong standard to determine if Labine consented to a search of his person.

2. Whether the trial court erred in its application of the exclusionary rule.

**STANDARD OF REVIEW**

[¶12.] Our standard of review on suppression cases is well settled,

> A motion to suppress based on an alleged violation of a constitutionally protected right is a question of law reviewed de novo. We review findings of fact under the clearly erroneous standard. Once the facts have been determined, however, the application of a legal standard to those facts is a question of law reviewed de novo.

---

2. The issues presented in the petition for discretionary appeal were: 1) Whether the court erred in use of a legal standard to determine scope of the consent search; 2) Whether detection of alcohol and marijuana odors should have been addressed by the court, and if so, whether such odors detected from coming within the car led to probable cause to justify search of passengers and the car; 3) Whether Labine failed to show standing in order to challenge the search of the car and items and persons within; and 4) Whether the court erred in omission of the required balancing test to determine if deterrence benefits outweighed substantial social costs of exclusionary rule application. Two of these issues were briefed in the actual appeal. Because the other two issues were not briefed or even mentioned in the State's brief, they are deemed waived.

-4-

State v. Sweedland, 2006 SD 77, ¶12, 721 NW2d 409, 412 (citing State v. Chavez, 2003 SD 93, ¶13, 668 NW2d 89, 95) (additional citations omitted).

[¶13.]     The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[3]

This prohibition generally means a warrant must be issued before an individual may be subject to a search or seizure. Terry v. Ohio, 392 US 1, 20, 88 SCt 1868, 1879, 20 LEd2d 889, 905 (1968); State v. Ballard, 2000 SD 134, ¶10, 617 NW2d 837, 840. However, there are exceptions to the general warrant requirement including, as argued in this case, consent. *See* State v. McGarrett, 535 NW2d 765, 767 (SD 1995) (noting that "once a person consents to a search, probable cause is no longer necessary"); *see also Sweedland*, 2006 SD 77, ¶13, 721 NW2d at 412-13 (noting the automobile exception); State v. Swalve, 2005 SD 17, ¶36, 692 NW2d 794, 803 (discussing the independent source doctrine); State v. Sorenson, 2004 SD 108, ¶8 n4, 688 NW2d 193, 196 n4 (discussing the good faith exception); State v. Raveydts, 2004 SD 134, ¶19, 691 NW2d 290, 296 (Sabers, J., concurring specially) (listing

---

3.     Article 6 section 11 of the South Dakota Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause supported by affidavit, particularly describing the place to be searched and the person or thing to be seized.

exceptions to warrant requirement including consent, exigent circumstances, search incident to arrest, and protective sweeps).

[¶14.]     "[L]aw enforcement is afforded no deference when relying on an exception to" the warrant requirement. *Sweedland*, 2006 SD 77, ¶14, 721 NW2d at 413 (citing *Raveydts*, 2004 SD 134, ¶8, 691 NW2d at 293; State v. Luxem, 324 NW2d 273, 279 (SD 1982)). Furthermore, the State has the heavy burden of proving a warrantless search meets an exception to the warrant requirement. *Id.* In this case, the State has the burden to show by a preponderance of the evidence that consent was voluntarily given. *See* State v. Akuba, 2004 SD 94, ¶13, 686 NW2d 406, 412-13. In order to determine if consent was voluntary, we look at the totality of the circumstances. *Id.* ¶25.

[¶15.]     The State's first argument in this case is that the magistrate court held the State to a higher burden than preponderance of the evidence. In its memorandum opinion, the court stated that "the testimony of other witnesses gives the court reasonable doubt. As such the Court finds the State has not met its burden of proof." According to the State, the trial court's "erroneous view of the applicable law" requires reversal.

[¶16.]     However, the magistrate's memorandum opinion is not incorporated into its findings of fact and conclusions of law. The specific findings of fact and conclusions "supersede the memorandum and articulate the trial court's final and determinative thoughts . . . ." State v. Tapio, 459 NW2d 406, 410 (SD 1990). "[I]t is settled law that we do not review the trial court's memorandum opinion unless the same is expressly incorporated in the trial court's findings of fact and conclusions of

law." Linard v. Hershey, 516 NW2d 304, 305 (SD 1994) (quoting Olson v. Olson, 438 NW2d 544, 547 (SD 1989) (additional citations omitted)). Since the memorandum was not incorporated, and cannot be used, our review is limited to the findings of facts and conclusions of law.

[¶17.]     The State also argues the trial court erred because the findings and conclusions do not explain what standard was utilized. The absence in the conclusions of the legal standard used does not require reversal. Whether the State met their burden is a legal question we review de novo. *Sweedland*, 2006 SD 77, ¶12, 721 NW2d at 412 (stating the application of legal standard to facts is reviewed de novo) (citing *Chavez*, 2003 SD 93, ¶13, 668 NW2d at 95) (additional citations omitted).

[¶18.]     After hearing the officers and Labine testify, the magistrate found "that the consent given by Defendant Labine to Trooper Swets was limited in scope to a pat search of his clothing." It explained that this factual finding was arrived at after "careful review of the contradictory testimony, having observed the witnesses' demeanors, as well as vocal nuance, volume, and intonation, and having considered the issue of credibility of the witnesses . . . ." It is the trial court's responsibility to weigh the evidence, including credibility, and make factual findings. State v. Lockstedt, 2005 SD 47, ¶33, 695 NW2d 718, 729. "Due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." SDCL 15-6-52(a). This Court does not reweigh the evidence and derive new factual findings; rather, the trial court's factual findings will not be overturned unless they are clearly erroneous. *Lockstedt*, ¶33 (quoting Anderson v. City of Bessemer City, 470

US 564, 573-74, 105 SCt 1504, 1511, 84 LEd2d 518 (1985)) (noting that reviewing courts may not reverse factual findings if plausible in light of the entire record, even if it would have weighed the evidence differently). Clearly erroneous factual findings mean "we are left with a definite and firm conviction that a mistake as been made" or the findings are clearly against the weight of the evidence. State v. Belmontes, 2000 SD 115, ¶9, 615 NW2d 634, 637 (additional citations omitted).

[¶19.] In this case, the record does not demonstrate that the trial court's factual findings are clearly erroneous. The magistrate noted that Labine's testimony was given less weight since he had more to gain from suppression of the evidence. Nonetheless, it noted his testimony was consistent with Officer Symonds' testimony that Trooper Swets asked to "pat-down" Labine, not conduct a search. After weighing the credibility of the witnesses and their testimony, the trial court resolved the conflicting testimony in favor of Labine and Officer Symonds' testimony. This finding is not clearly erroneous.

[¶20.] The trial court found Labine was only asked, and only consented to, a pat-down search. After applying the facts to the legal standard, we conclude the State did not prove even by a preponderance of the evidence that Labine's consent removed the need for a warrant to search his person. The trial court found consent was limited to a pat search.[4] Therefore, Trooper Swets exceeded the scope[5] of

---

4.    The complete finding is as follows:

Upon careful review of the contradictory testimony, having observed the witnesses' demeanors, as well as vocal nuance, volume, and intonation, and having considered the issue of credibility of the witnesses, I find that the

(continued . . .)

consent when he reached into Labine's pockets and removed a small baggie of marijuana, an object that did not give the officer a reasonable belief of danger.[6] *See* Minnesota v. Dickerson, 508 US 366, 378, 113 SCt 2130, 2138-39, 124 LEd2d 334 (1993) (affirming the suppression of heroin found in defendant's pocket where the officer did not know the illegality until the officer manipulated the substance within the pocket); Terry v. Ohio, 392 US 1, 30, 88 SCt 1868, 1884-85, 20 LEd2d 889 (1968) (officer may "conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him").

[¶21.]    Having determined the search exceeded the consented scope and was illegal, the next inquiry is whether the exclusionary rule should be applied.

[¶22.]    The exclusionary rule applies to evidence that is obtained in violation of the Fourth Amendment's prohibition against illegal searches and seizures. Mapp v. Ohio, 367 US 643, 655, 81 SCt 1684, 1691, 6 LEd2d 1081 (1961). While initially

_____

(. . . continued)

> consent given by Defendant Labine to Trooper Swets was limited in scope to a pat search of his clothing.

> Finding of Fact 12, State v. Labine, No. 06-366 (Lawrence County, August 16, 2006).

5.    The magistrate found that,

> The resulting search of the Defendant, which exceeded the limited scope of the pat search, and the seizure of what was in his pocket violated the Fourth and Fourteenth Amendments of the United States Constitution and Article VI, § 1 and § 11 of the South Dakota Constitution.

> Conclusion of Law 10, *Labine*, No. 06-366 (Lawrence County, August 16, 2006).

6.    Both Officer Symonds and Trooper Swets testified they did not believe they were in any danger.

exclusion was applied in all cases where evidence was illegally obtained, the United States Supreme Court has limited the application of the exclusionary rule. United States v. Leon, 468 US 897, 922, 104 SCt 3405, 3420, 82 LE2d 677 (1984). Now, the exclusionary rule is a judicially created remedy of deterring illegal searches and seizures that is designed to be employed, "where its remedial objectives are thought most efficaciously served." United States v. Calandra, 414 US 338, 348, 94 SCt 613, 620, 38 LEd2d 561 (1974); see Sorenson, 2004 SD 108, ¶8, 688 NW2d at 196-97. Therefore, the rule is applicable "where its deterrence benefits outweigh its 'substantial social costs.'" Pennsylvania Bd. of Probation & Parole v. Scott, 524 US 357, 363, 118 SCt 2014, 2019, 141 LEd2d 344 (1998) (quoting Leon, 468 US at 907, 104 SCt at 3412).

[¶23.]     The State claims the trial court must be reversed because "[a]t no place within the trial court's memorandum decision does the court discuss the social costs of application of the exclusionary rule and balance those costs against any deterrent benefit." However, the State is again mistakenly relying on the memorandum decision. In the magistrate's conclusions, it specifically explains that "exclusion of evidence here, where a law enforcement officer obtained limited consent under one pretense and then exceeded the scope of that consent, is necessary to deter future police misconduct." It further explained,

> If law enforcement were allowed to obtain consent for a pat-down search of a suspect's outer clothing by use of express words like "pat-down" and then intentionally exceed the scope of that consent, including reaching into a suspect's pockets for any and all objects not otherwise identified as possible weapons, the individual protections guaranteed under the Fourth and Fourteenth Amendments of the United States Constitution and

> Article VI, § 11 of the Constitution of South Dakota would be rendered moot.

Conclusion of Law 9, *Labine*, No. 06-366 (Lawrence County, August 16, 2006). The State claims the mention of the benefit in deterrence is not enough; the trial court must also list the societal costs. It argues the trial court must make more specific findings or conclusions as to how that benefit balances against the social costs in application of the exclusionary rule. However, the findings and conclusions indicate the trial court did consider the deterrent effect versus societal costs.

[¶24.] The State goes on to argue that the societal costs in lost evidence outweigh any deterrence, and that there was confusion, but the officer did not act with "conscious disregard of Defendant's rights under the Fourth Amendment." However, this ignores the trial court's findings of facts. It found the Trooper repeatedly asked for consent to "pat-down" Labine. When he received consent for that limited search, he intentionally and almost immediately exceeded the scope of consent. Exclusion of the evidence deters police officers from "misunderstanding" the type of search that was consented to and then violating suspect's rights. This deterrence outweighs the cost of lost evidence.

[¶25.] For these reasons, we affirm.

[¶26.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.