#24598-rev & rem-DG

**2008 SD 77**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellant,

　v.

RYAN A. WENDLING,                         Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

* * * *

HONORABLE RONALD K. ROEHR
Judge

* * * *

LAWRENCE E. LONG
Attorney General

FRANK GEAGHAN
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellant.

MICHAEL J. BUTLER
Butler Law Office, P.C.
Sioux Falls, South Dakota                 Attorney for defendant
                                          and appellee.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 26, 2008

OPINION FILED **07/30/08**

#24598

GILBERTSON, Chief Justice

[¶1.] On February 7, 2007, Ryan A. Wendling (Wendling) was arrested for driving under the influence of alcohol (DUI). Alleging a violation of his Fourth Amendment protection against illegal search and seizure, Wendling filed a motion in the South Dakota Third Judicial Circuit to suppress all evidence obtained as a result of the traffic stop that led to the arrest. The circuit court granted the motion. The State filed a petition seeking discretionary intermediate review by this Court. We granted that petition. We now reverse and remand.

## FACTS AND PROCEDURE

[¶2.] The traffic stop leading to Wendling's arrest occurred in the City of Brookings, South Dakota, shortly before 1:00 a.m. on February 7, 2007. At that time, Officer Dana Rogers (Rogers) of the Brookings Police Department, had his patrol car positioned near the intersection of 6th Avenue and Front Street. As he looked to the west, he observed a pickup, operated by Wendling, that had been proceeding south on 5th Avenue as it turned east on to Front Street. The street at the time was covered with snow and ice. Rogers observed that "the back end of the pickup swung around and made a fishtail action" as it rounded the corner. Rogers stopped Wendling and thereafter asked Wendling to accompany him to the patrol car. Once Wendling was inside the patrol car, Rogers detected "a strong odor of alcoholic beverages." Rogers administered a preliminary breath test, which indicated that Wendling had a blood alcohol content of .102. Rogers placed Wendling under arrest and transported him to the hospital emergency room where the results of a blood test revealed that Wendling's blood alcohol content was .132.

-1-

[¶3.]     Wendling was cited that day for overdriving road conditions in violation of SDCL 32-25-3. On February 22, 2007, the Brookings Police Department Chief of Police swore out a complaint against Wendling for DUI in violation of SDCL 32-23-1(1). An information charging Wendling with that offense was filed by the Brookings County State's Attorney. Since Wendling had two prior DUI convictions within 10 years of February 7, 2007, a supplemental information charging him with felony third offense DUI in violation of SDCL 32-23-4 was also filed.

[¶4.]     At a preliminary hearing on April 16, 2007, Rogers indicated that it was icy enough at the time of the traffic stop that he did not have Wendling perform an outdoor field sobriety test. He also stated that he assumed Wendling lost traction going around the corner because of the snow and ice and indicated that in his opinion a loss of traction under those conditions was not unusual.

[¶5.]      When Wendling's motion to suppress was heard on June 6, 2007, Rogers indicated that while he saw the pickup fishtail, he never saw it going sideways and reiterated his opinion that the snow and ice on the road were responsible for Wendling's loss of traction. He also acknowledged that "*other than the fact that the back-end [of the pickup] lost traction as it turned the corner on [the] icy street*," (emphasis added), there was nothing about Wendling's driving that appeared erratic in the one-block stretch between 5th and 6th Avenues within which Rogers observed Wendling. Rogers then confirmed that his "sole basis" for initiating the stop was the fishtail as Wendling rounded the corner.

#24598

[¶6.]     The circuit court entered its memorandum opinion on June 22, 2007, granting Wendling's motion to suppress evidence obtained as a result of the February 7 traffic stop. The court's memorandum decision was incorporated into its findings of fact and conclusions of law entered on July 20, 2007. The court found that Rogers stopped Wendling because of his suspicion that Wendling was overdriving the road conditions when he rounded the corner of 5th Avenue and Front Street in violation of SDCL 32-25-3. Noting that the streets were "ice and snow covered" at the time, the court also found that the pickup "'fishtailed'" when it lost traction and that "Rogers did not observe *any other* erratic driving" as he watched the pickup travel toward him on Front street. (Emphasis added). Citing *State v. Tiffin*, 121 P3d 9, 12 (OrApp 2005), the court concluded that in order for there to be justification for the stop, "Rogers' [sic] suspicion of a violation [of SDCL 32-25-3 must be] objectively reasonable" and that "to be objectively reasonable, *the facts as perceived by Rogers must actually constitute, or support a violation of the statute*." (Emphasis added). In reaching its decision to grant Wendling's motion, the circuit court also concluded that "Rogers did not have a *reasonable and articulable suspicion of a violation* of [SDCL 32-25-3]." (Emphasis added).

[¶7.]     The State raises one issue on appeal:

> Whether the circuit court erred in granting Wendling's motion to suppress evidence obtained as a result of the February 7, 2007, traffic stop based on its conclusion that there was no reasonable and articulable suspicion of a violation SDCL 32-25-3 to justify the stop.

-3-

## STANDARD OF REVIEW

[¶8.]     When a motion to suppress evidence is based on an alleged violation of

a constitutionally protected right, we apply the de novo standard to our review of

the circuit court's decision to grant or deny that motion.  State v. Labine, 2007 SD

48, ¶12, 733 NW2d 265, 268-269.  "While we review the [circuit] court's findings of

fact under the clearly erroneous standard, we give no deference to its conclusions of

law and thereby apply the de novo standard."  State v. Condon, 2007 SD 124, ¶15,

742 NW2d 861, 866 (citation omitted).

## ANALYSIS AND DECISION

[¶9.]     **Whether the circuit court erred in granting Wendling's motion to suppress evidence obtained as a result of the February 7, 2007, traffic stop based on its conclusion that there was no reasonable and articulable suspicion of a violation [of] SDCL 32-25-3 to justify the stop.**

[¶10.]     SDCL 32-25-3, the statute upon which Rogers issued the citation to

Wendling for "overdriving road conditions," provides as follows:

> It is a Class 2 misdemeanor for any person to drive a motor
> vehicle on a highway located in this state at a speed greater
> than is *reasonable and prudent under the conditions then
> existing* or at speeds in excess of those fixed by this chapter
> or provided by the Transportation Commission.

(Emphasis added).  Referencing this statute in Conclusion 6, the circuit court

stated:

> . . . SDCL 32-25-3, regulates the speed of driving, not the
> manner of driving.  The statute prohibits driving "at speeds
> greater than is reasonable and prudent under the conditions
> then existing."  There was little or no evidence presented
> by the State of what speed Wendling was driving, or of
> what speed would have been reasonable and prudent,
> or that excessive speed caused the fishtailing.  Rogers'
> opined that the fishtailing was caused by rapid or hard
> acceleration, a maneuver that can be done at almost any

speed. Indeed, Rogers testified at the preliminary hearing in this matter that he assumed the loss of traction was due to the snow and ice and that this was not unusual considering the road conditions.

[¶11.] A review of the circuit court's incorporated memorandum and its findings of fact and conclusions of law reveals that it erroneously applied the probable cause standard set out by the Oregon Court of Appeals in *Tiffin* to this largely factual conclusion. That court held in *Tiffin*:

> An officer may lawfully stop and detain a person for a traffic infraction if the officer has *probable cause* to believe that an infraction has been committed. *Probable cause exists if, at the time of the stop, the officer subjectively believes that the infraction occurred and if that belief is objectively reasonable under the circumstances.*

121 P3d at 11(citing State v. Isley, 48 P3d 179 (OrApp 2002)(internal citations omitted)(emphasis added). However, this is more than what is required to justify a lawful traffic stop in South Dakota. The standard we have consistently applied to justify a traffic stop is the lesser standard of reasonable suspicion. State v. Lockstedt, 2005 SD 47, ¶16, 695 NW2d 718, 722 (quoting State v. Barton, 2001 SD 52, ¶13, 625 NW2d 275, 279); *see also* State v. Lownes, 499 NW2d 896, 898-99 (SD 1993) (recognizing that the "reasonable suspicion" standard is less demanding than "probable cause") (quoting Alabama v. White, 496 US 325, 330, 110 SCt 2412, 2416, 110 LE2d 301,309 (1990)).

[¶12.] In applying the reasonable suspicion standard, we recognize that "[w]hile the stop may not be the product of mere whim, caprice, or idle curiosity, it is enough that the stop is based upon 'specific and articulable facts which taken together with rational inferences from those facts reasonably warrant the

intrusion.'" *Lockstedt*, 2005 SD 47, ¶17, 695 NW2d at 722; State v. Muller, 2005 SD 66, ¶14, 698 NW2d 285, 289; s*ee also* State v. Aaberg, 2006 SD 58, ¶¶13, 14, 718 NW2d 598, 601-02 (holding that the driver of a vehicle who pulled into the parking lot of a bar late in the evening, who staggered and nearly fell down, constituted a specific and articulable basis by which a reasonable police officer could suspect the subject was under the influence of alcohol); State v. Ballard, 2000 SD 134, ¶¶2, 11, 617 NW2d 837, 839, 840-41 (holding that a vehicle that was traveling part way on the shoulder and that then crossed over the center line, constituted reasonable suspicion to conduct a traffic stop); State v. Sleep, 1999 SD 19, ¶8, 590 NW2d 235, 238 (weaving and straddling the line between lanes constitutes reasonable suspicion for a law enforcement traffic stop); State v. Thill, 474 NW2d 86, 88 (SD 1991) (holding that avoidance of a road block was sufficient to create an articulable and reasonable suspicion supporting a traffic stop); State v. Anderson, 331 NW2d 568, 570 (SD 1983) (holding reasonable suspicion and not probable cause necessary for traffic stop).

[¶13.]     Based on a proper application of the reasonable suspicion standard, which is a less demanding standard than "probable cause," to the material facts of this case, we conclude that there was a proper basis for Rogers to stop Wendling to ascertain the basis for the erratic driving. Therefore, we reverse the circuit court and remand for further proceedings consistent with this opinion.

[¶14.]     SABERS, KONENKAMP, and ZINTER, Justices, concur.

[¶15.]     MEIERHENRY, Justice, concurs in result.

#24598

MEIERHENRY, Justice (concurring in result).

[¶16.]     I concur in result; however, I write to clarify the correct standard for a valid traffic stop under the facts of this case. Since the officer observed what he believed was a traffic violation, he had probable cause to stop the vehicle. The officer did not stop the vehicle because he had suspicions of drunk driving or to investigate any other suspicious activity; he stopped Wendling to cite him for a traffic violation. Consequently, probable cause, *not* reasonable suspicion was the correct standard. *See* Atwater v. City of Lago Vista, 532 US 318, 354, 121 SCt 1536, 1557, 149 LEd2d 549 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender"); Whren v. United States, 517 US 806, 810, 116 SCt 1769, 1772, 135 LEd2d 89 (1996) ("[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred"); Matter of Hopewell, 376 NW2d 812, 815 (SD 1985). As LaFave's treatise on *Search and Seizure* explains:

> In the run-of-the-mill case, . . . traffic stops are made based upon the direct observations of unambiguous conduct or circumstances by the stopping officer. That is, in most of the cases the stopping will have been made on **full probable cause**. Considering that the Supreme Court held in *Atwater v. City of Lago Vista* that probable cause alone suffices to justify a *custodial* arrest for the slightest traffic offense, it is apparent that probable cause is legally sufficient where the lesser intrusion of a traffic stop occurs (except perhaps for parking violations).

4 Wayne R. LaFave, *Search and Seizure* § 9.3(a) at 360 (4th ed 2004) (first emphasis added).

-7-

[¶17.]    In contrast, if an officer has not witnessed a violation but only has reasonable articulable suspicion of criminal activity, the officer can stop the vehicle to investigate under *Terry v. Ohio*, 392 US 1, 22, 88 SCt 1868, 1880, 20 LEd2d 889 (1968) (noting that a "police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of **investigating possibly criminal behavior** even though there is no probable cause to make an arrest") (emphasis added). *See also* State v. Hayen, 2008 SD 41, ¶5, 751 NW2d 306, 308 (recognizing that the "Fourth Amendment permits a brief investigatory stop of a vehicle"). Thus, while probable cause provides authority for a custodial arrest, reasonable suspicion provides authority to stop an individual to *investigate* a *suspected* crime. *Compare Atwater*, 532 US at 354, 121 SCt at 1557, 149 LEd2d 549 (citation omitted) (any minor traffic violation equals probable cause and justifies custodial arrest "without the need to 'balance' the interests and circumstances involved in particular situations"), *with Terry,* 392 US at 21-22, 88 SCt at 1879-80, 20 LEd2d 889 (noting reasonable suspicion permits investigation of a crime without the authority to make arrest; however, there must be a "balancing [of] the need [i.e., "governmental interest"] to search (or seize) against the invasion which the search (or seizure) entails"); Michigan v. Summers, 452 US 692, 699, 101 SCt 2587, 2592-93, 69 LEd2d 340 (1981) (noting that investigative seizures on less than probable cause are justified by "*substantial* law enforcement interests") (emphasis added).

[¶18.]    Here, the officer testified that the "sole" reason he made the traffic stop was because he observed Wendling overdrive the conditions in violation of SDCL 32-25-3. We have clearly said that: "[a]n officer's observation of a traffic

violation, however minor, gives the officer *probable cause* to stop a vehicle, even if the officer would have ignored the violation but for a *suspicion* that greater crimes are afoot." State v. Akuba, 2004 SD 94, ¶16, 686 NW2d 406, 414 (citations omitted) (emphases added).  Here, the officer did not make a *Terry* stop of Wendling to investigate suspicious activity, the officer stopped Wendling because he believed that he had probable cause to issue a citation.

[¶19.]      Thus, the proper question was whether probable cause existed to warrant the stop.  We have defined probable cause as follows:

> Officers are not required to know facts sufficient to prove guilt, but only knowledge of facts sufficient to show probable cause for an arrest or search.  These are factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians, act.
> . . .
> Probable cause is not determined with the benefit of hindsight, it is determined by those factors present at the time of the arrest which would lead a reasonable person to believe that a crime has been committed.

*Matter of Hopewell*, 376 NW2d at 815 (SD 1985) (citations and quotations omitted).

[¶20.]      Although I believe that the proper test in this circumstance is a probable cause standard, I nevertheless would reverse the circuit court.  Ultimately what the court appears to have done is to adjudicate the charge as opposed to determining if the officer had probable cause to stop and cite Wendling for overdriving the conditions.  The officer had probable cause if the "factors present at the time . . . would lead a reasonable person to believe that a crime has been committed." *Matter of Hopewell,* 376 NW2d at 815 (citations and quotations omitted).  At the preliminary hearing, the officer described what he saw that caused him to stop Wendling and issue him a ticket.  He testified as follows:

> I was parked at the stop sign on the intersection of First Street and Sixth Avenue.
>
> . . .
>
> As I was parked facing west, I noticed a vehicle travel on to Front Street from Fifth Avenue, at that time the back end of the pickup swung around and made a fishtail action.

On cross examination, the officer described the "fishtailing" as follows: "The back end was – the back tires had lost traction causing the back end to swing around. It wasn't going sideways or anything like that, but it was enough to notice from a block away." The officer assumed the snow and ice caused the vehicle to lose traction.

[¶21.] The circuit court determined that because "there was little or no evidence presented by the State of what speed Wendling was driving, or of what speed would have been reasonable and prudent, or that excessive speed caused the fishtailing," the officer "did not have a reasonable and articulable suspicion of a violation." The circuit court, however, found that "[the officer's] opinion was that the loss of traction on the ice and snow was the cause of the fishtailing, in addition to the rapid acceleration of the vehicle. . . . The evidence therefore established that Wendling drove erratically-accelerated too hard and fishtailed, not that he drove too fast." SDCL 32-25-3 criminalizes the operation of a vehicle "at a speed greater than is reasonable and prudent under the conditions then existing." The officer's description of the vehicle rapidly accelerating on the icy street causing it to fishtail provided sufficient evidence for a reasonable person to believe that Wendling was operating his vehicle at a speed greater than was reasonable and prudent under the icy conditions. Although the facts may be insufficient to convince a trier of fact

#24598

beyond a reasonable doubt of guilt, the findings of fact were sufficient to establish probable cause to stop the vehicle.