2004 SD 134

**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Kelli Joy RAVEYDTS, Santana Jean Hansen, and Robert James Nicholson, Defendants and Appellees.**

No. 23154.

Supreme Court of South Dakota.

Argued on Nov. 17, 2004.

Decided Dec. 22, 2004.

Lawrence E. Long, Attorney General, Gary Campbell, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellant.

Lynn A. Moran, Custer, South Dakota, Attorney for appellee Raveydts.

Chris M. Beesley, Custer, South Dakota, Attorney for appellee Hansen.

Matthew L. Skinner, Rapid City, South Dakota, Attorney for appellee Nicholson.

KONENKAMP, Justice.

[¶ 1.] In this appeal, we confront the question of what amount of independent police corroboration is sufficient, when combined with information received from anonymous informants, to establish probable cause for the issuance of a search warrant. Two anonymous callers detailed to a deputy sheriff what they believed to be drug-dealing activity they saw occurring at their apartment building. They provided license plate numbers of persons coming to the apartment to conduct ostensible drug purchases. The deputy checked the license numbers and verified that several of the plates belonged to known drug users. When this information was presented in an affidavit, a judge issued a warrant to search the premises. After the defendants were charged, on a motion to suppress, the circuit court ruled that the warrant was deficient in probable cause and suppressed all the seized evidence. On intermediate appeal, the State contends that the affidavit supporting the warrant had sufficient probable cause, and, even if it did not, the good faith exception permits the admittance of the seized evidence. Defendants argue that the deputy should have done more to independently corroborate the anonymous tips. Because the affidavit in support of the warrant was based on two separate anonymous calls plentiful in detail about apparent drug related activity at the apartment, and because the deputy corroborated this information by verifying that the license plate numbers of some of the persons allegedly coming to the apartment were known to have been involved in illicit drugs, we reverse, concluding that sufficient probable cause supported the issuance of the search warrant.

## Background

[¶ 2.] On the morning of July 6, 2003, Deputy Sheriff James Biesheuvel of the Custer County Sheriff's Department received two anonymous telephone calls. The first caller reported that he believed illegal drug activity was taking place in an

apartment located in the upstairs portion of his apartment building. Throughout the first caller's explanation of what he thought was suspicious, he stated that he believed the occupant's name was "Kelli," that the address to the apartment building was 886 Montgomery Street, that Kelli had a lot of traffic coming in and out of the building at all hours of the day and night, and that visitors to the apartment complex would only stay for a short period of time. The first caller also indicated that Kelli would whistle to foot and vehicle traffic from her window to signal the visitors. On one occasion, the caller observed a blonde female visit Kelli's apartment at 3 o'clock in the morning. The caller later watched the female leave Kelli's apartment with something in her hand that was small and plastic. Lastly, the first caller provided the officer with a list of vehicle license plate numbers of persons who had visited Kelli's apartment complex within the last few days. The caller did not give his name to the deputy.

[¶ 3.] The second caller telephoned the sheriff's deputy two hours after the first caller. Like the first caller, this person never gave a name or other identifying information. The second caller, too, claimed to have observed a lot of foot and vehicle traffic coming to and from "Kelli Joy Raveydts's" apartment throughout the middle part of the week. The caller recognized one of Raveydts's visitors as a former, and possibly current, drug dealer. Additionally, a similar list of license plate numbers was provided to the deputy. Finally, because of the caller's claimed experience with illicit drugs, the second caller told the deputy that a particular smell coming from Raveydts's apartment had the odor of marijuana.

[¶ 4.] Using public records, Deputy Biesheuvel was able to identify the owners of the license plate numbers supplied by the callers. Three of the identified car owners had a questionable, if not criminal, history. Two of the vehicle owners were involved in prior drug violations. Specifically, the deputy indicated in his affidavit that one of the three known vehicle owners and prior arrestees had been recently identified through drug debriefs and interviews as being involved in large marijuana sales throughout the Custer area.

[¶ 5.] Based on this information provided in the affidavit, a circuit judge issued a search warrant. The warrant authorized law enforcement officers to search Raveydts's apartment, anyone located in the apartment, the urine of anyone located in the apartment, and any vehicle located at the apartment building during the search belonging to Raveydts or any visitor. The search was conducted at approximately 6:40 p.m., the same day that Deputy Biesheuvel received the anonymous telephone calls. Upon entering the apartment, officers apprehended Defendant Robert James Nicholson and seized a hypodermic syringe from his pocket. When Defendants Raveydts and Santana Jean Hansen arrived at the apartment in the course of the search, they were also arrested. Numerous items relating to illegal drugs were found and seized in the apartment, including baggies with residue, documents, prescription tablets, a marijuana pipe, snort tubes, a bindle of opium, plastic bongs, and a small tool with residue. Defendants were all charged with drug related offenses based on the result of the search and interviews conducted after their arrests.

[¶ 6.] Defendants moved to suppress the evidence obtained, alleging that the warrant and supporting affidavit were deficient for lack of probable cause. The circuit court granted defendants' motion to suppress, finding that the search warrant was issued on insufficient information. On

intermediate appeal, the State asserts (1) that the trial court erred in suppressing the evidence because the affidavit provided sufficient probable cause to justify the warrant, and (2) if probable cause was lacking, the seized evidence should be admitted under the good faith exception.

### Analysis and Decision

[¶ 7.] We review the sufficiency of a search warrant "by looking at the totality of the circumstances to decide if there was at least a 'substantial basis' for the issuing judge's finding of probable cause." *State v. Jackson*, 2000 SD 113, ¶ 8, 616 N.W.2d 412, 416 (citing *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983) (citations omitted)). In *Gates*, a pivotal decision in search and seizure law, the United States Supreme Court abandoned formal application of the two-pronged test enunciated in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Now the inquiry is whether the information provided to the judge was sufficient for a "common sense" decision that there was a "fair probability" the evidence would be found on the person or at the place to be searched. *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. "Furthermore, we review the issuing judge's probable cause decision to grant a search warrant independently of the conclusion reached by the suppression hearing court." *State v. Boll*, 2002 SD 114, ¶ 44, 651 N.W.2d 710, 721 (Konenkamp, J., concurring) (referencing *Jackson*, 2000 SD 113, ¶ 8, 616 N.W.2d at 416).

[¶ 8.] "Reviewing courts are not empowered to conduct an after-the-fact de novo probable cause determination; on the contrary, the issuing judge's legal basis for granting the warrant is examined with 'great deference.'" *Jackson*, 2000 SD 113, ¶ 9, 616 N.W.2d at 416 (following *Gates*,

462 U.S. at 236, 103 S.Ct. at 2331). " 'A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.'" *Id.* (quoting *Massachusetts v. Upton*, 466 U.S. 727, 733, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721, 727 (1984)). Under this Court's implementation of the *Gates* standard, we view an anonymous caller's " 'reliability, veracity, and basis of knowledge'" as relevant considerations in finding probable cause; these considerations, however, are " 'not independent, essential elements.'" *Id.* (repeating *United States v. Reivich*, 793 F.2d 957, 959 (8thCir.1986)); *see Gates*, 462 U.S. at 230, 103 S.Ct. at 2328.

[¶ 9.] Under the Fourth Amendment to the United States Constitution and, similarly, in Article VI, Section 11, of the South Dakota Constitution, "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause supported by affidavit...." SD Const art VI, § 11. " 'The determination of whether an affidavit in support of a search warrant shows probable cause for issuance of the warrant must be based upon an examination of the four corners of the affidavit.'" *Jackson*, 2000 SD 113, ¶ 11, 616 N.W.2d at 416 (quoting *State v. Lodermeier*, 481 N.W.2d 614, 622 (S.D.1992) (following *State v. Iverson*, 364 N.W.2d 518, 522 (S.D. 1985))). "Reasonable inferences may be drawn from the information in the affidavit." *Id.* (citing *Lodermeier*, 481 N.W.2d at 622; *State v. Kaseman*, 273 N.W.2d 716, 723 (S.D.1978)).

[¶ 10.] Deputy Biesheuvel's affidavit in support of the State's request for a search warrant of Raveydts's apartment provides in pertinent part:

On 7-6-03 at approximately 0800 hours I was contacted by anonymous male subject at the Custer County Sheriff's Office. The male subject refused to be identified but stated that he had information on suspicious activity that he believed to be related to narcotics trafficking. He stated that he currently lives at the Winchester Apartment building located at 866 Montgomery Street. He stated that a young lady he only knows as Kelli that lives in the upstairs portion of the building has a lot of traffic in and out of her apartment. He stated the traffic will be passing by on the street and Kelli will whistle at them from her front window. The vehicles will stop [and the passengers will] go to her apartment for a short period of time ranging from 5–15 minutes and then will leave. He stated that Kelli is up at all times of the day and he even observed her at 0300 hours looking out her window for traffic. As he left that early morning a car [that] drove past was whistled at by Kelli and stopped. The driver he described as being a young female with blonde hair. The driver of the car walked upstairs [and] went into the apartment and left a few minutes later with something small and plastic clutched in her hand. He stated that there is usually two females at the window and does not know the second female and only knows Kelli. He provided me with a list of license plates that he has observed in the last few days at the apartment. He stated that there has [sic] been more vehicles at the house but he could not always read the license plate. One of the license plates belonged to [John Doe]. [Doe] has been arrested for possession of marijuana in the past and has recently been identified through drug debriefs and interviews to be dealing a large amount of marijuana in the Custer area. I am also aware that [Doe] was identified in an interview conducted by the South Dakota Department of Criminal Investigation of receiving large amounts of marijuana from a person arrested by DCI earlier this year.

The affidavit then mentions two other individuals that Deputy Biesheuvel's license plate search revealed. Each of the individuals had, in some form, a history of illegal drug activity. Following the deputy's description of the first call, he next described the conversation he had with the second anonymous caller.

At approximately 1000 hours I received an anonymous call from a subject. The subject refused to identify himself/herself but stated he/she had information in regards to Kelli Joy Raveydts. The caller stated that there has been a lot of foot and vehicle traffic at the apartment owned by Kelli since Wednesday of this week. He/She stated that he/she is a former [n]arcotics user and recognized the pattern of drug deals taking place based upon his/her previous experiences. He/She stated that on Wednesday of this week he/she observed a male subject he/she knows to be [John Doe] arrive at Kelli's apartment. He/She knows [Doe] to have sold marijuana in the past and believes him to still be doing so. The caller stated that [Doe] stayed for a few minutes before leaving. Immediately after he left vehicles started showing up at Kelli's apartment and staying for less than twenty minutes for each visit. He/She stated that he/she counted five vehicles that came and went from the apartment immediately after [Doe's] visit. He/She. also stated that he/she recognizes the smell of burning or burnt marijuana from his/her previous experiences and that he/she occasionally smells the odor coming from Kelli's apartment.

The affidavit offered no other corroborating evidence to support the deputy's conclusion that illegal activity was taking place.

[¶ 11.] Two elements are often crucial in deciding whether an anonymous informant's tip provides a "substantial basis" for the issuing court's finding of probable cause. First, an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the informant's] tip to greater weight than might otherwise be the case." *Gates*, 462 U.S. at 234, 103 S.Ct. at 2330. Here, the informants provided considerable detail about the activities they personally observed at Raveydts's apartment.

[¶ 12.] Second, the extent to which the tip is corroborated by the officer's own investigation is important. *Id.* at 244, 103 S.Ct. at 2335. We acknowledge that "corroboration of the information by independent investigation is an important factor in the calculus of probable cause." *United States v. LaMorie*, 100 F.3d 547, 553 (8thCir.1996) (citations omitted). *Cf. United States v. Vargas*, 931 F.2d 112, 114–16 (1stCir.1991) (upholding a search of defendant's home due to corroborative evidence gained after the police received an anonymous tip). Deputy Biesheuvel checked the motor vehicle licensing records to identify the individuals who allegedly visited Raveydts's apartment. But he performed no personal "surveillance [or] observation of unusual civilian or vehicular traffic at the address" to substantiate either caller's account of presumed illegal conduct. *United States v. Gibson*, 928 F.2d 250, 253 (8thCir.1991) (citing *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332). "An anonymous tip ... is insufficient in itself to support a finding of probable cause." *United States v. Wells*, 223 F.3d 835, 839 (8thCir.2000); *see Florida v. J.L.*, 529 U.S.

266, 268, 120 S.Ct. 1375, 1377, 146 L.Ed.2d 254 (2000). The question is whether the checking of the license plate numbers was sufficient independent corroboration.

[¶ 13.] The case of *People v. Titus*, 880 P.2d 148, 151–52 (Colo.1994), provides a helpful counterpoint to our case. Similarly, the issue in *Titus* was law enforcement corroboration of an anonymous informant's list of motor vehicle license plates of alleged drug buyers who frequented a suspect's home. There, the police corroborated that the license plate numbers of the vehicles on the list provided by the anonymous informant matched the description of the vehicles that the informant gave. *See id.* But this list was innocuous: "There [was] nothing in the affidavit to suggest ... that any of these vehicles belonged to known drug offenders...." *Id.* at 151. Thus, the court explained: "The matching of vehicle license plate numbers with vehicle descriptions was not the kind of 'police corroboration' that would serve to establish probable cause in this case. Absent any additional corroboration—for example, that the owners of the vehicles were involved in *illegal activity*—it was insufficient to support a finding of probable cause." *Id.* at 152 (emphasis added).

[¶ 14.] Here, on the other hand, Deputy Biesheuvel verified that some of the license plate numbers belonged to persons known to have been involved in illegal drug activity. This tended to corroborate the information the two anonymous informants had given. Furthermore, the informants' explicit and detailed description of alleged wrongdoing, all of which they observed firsthand, was entitled "to greater weight than might otherwise be the case." *Gates*, 462 U.S. at 234, 103 S.Ct. at 2330. And the two separate anonymous tipsters also tended to corroborate each other. Under the facts of this case, allowing deference to the issuing judge's probable

cause determination, we think the corroboration here was sufficient. The issuing judge had a "substantial basis" for determining that the deputy's affidavit established probable cause to search the apartment. We need not reach the question on the good faith exception to the exclusionary rule.

[¶ 15.] Reversed.

[¶ 16.] GILBERTSON, Chief Justice, and ZINTER, Justice, concur.

[¶ 17.] SABERS, Justice, concurs specially.

[¶ 18.] MEIERHENRY, Justice, dissents.

SABERS, Justice (concurring specially).

[¶ 19.] Although this is a very close question, I join the majority opinion for four reasons:

1. Although the two anonymous callers may have been the same person or may have collaborated with each other, there was some *corroboration* to support probable cause that drug crimes were being committed.

2. The law strongly favors an officer obtaining a search warrant, where the officer must go before a neutral Judge or Magistrate with an affidavit in support of a search warrant to establish "probable cause that a crime is being committed" before intrusion into a home. *State v. Meyer,* 1998 SD 122, ¶ 20, 587 N.W.2d 719, 723 (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)) ("Thus the most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' ").

3. Although Justice Meierhenry's writing raises valid concerns, including the statement that:

If the "corroboration" that occurred in the case is all we require, an unaccountable, anonymous caller can cause a completely innocent person's home to be raided by simply making up a provocative and entirely untruthful story.

That statement may be true, but there is no showing that is the case here. In fact, far more constitutional violations are likely to come from intrusions into homes and vehicles by officers without search warrants, under *claimed* exceptions to the search warrant requirement, including (1) claimed consent, (2) exigent circumstances including hot pursuit, (3) searches incident to arrest, and (4) protective sweeps. *State v. Heumiller,* 317 N.W.2d 126 (S.D.1982) (despite claims by law enforcement, no exigent circumstances existed to justify warrantless search of house); *State v. Bennett,* 295 N.W.2d 5 (S.D.1980) (exigent circumstances justifying warrantless search were not present). See the following divided opinions: *State v. Schwartz,* 2004 SD 123, 689 N.W.2d 430 (whether warrantless search of defendants' trash was an unreasonable search and seizure); *State v. Hess,* 2004 SD 60, 680 N.W.2d 314 (whether exigent circumstances justified officers' warrantless entry into apartment); *State v. Castleberry,* 2004 SD 95, 686 N.W.2d 384 (whether defendant's consent to search vehicle was free and voluntary); *State v. Lamont,* 2001 SD 92, 631 N.W.2d 603 (whether exigent circumstances justified entering defendant's motel room, to search and arrest him); *State v. Brassfield,* 2000 SD 110, 615 N.W.2d 628 (whether warrantless search of defendant's vehicle incident to his arrest was unconstitutional).

4. Finally, the coincidence of the corroboration of the license plates, along with the statements within the two anonymous telephone calls indicates that it was more probable than not that drug crimes were being committed, resulting in probable cause to support this search warrant.

MEIERHENRY, Justice (dissenting).

[¶ 20.] I respectfully dissent. The majority cites extensively to *Gates*. While *Gates* did abandon the formal application of the two-prong test for anonymous tips in favor of a totality of the circumstances analysis, it still requires "a conscientious assessment of the basis for crediting [anonymous] tips." *Id.* at 238, 103 S.Ct. 2317. The Court in *Gates* goes on to state, "Our decisions applying the totality of circumstances analysis outlined above have consistently recognized the value of corroboration of details of an informant's tip by independent police work." *Id.* at 241, 103 S.Ct. 2317. In fact, *Gates* discusses the value and significance of corroborating facts separately and at great length. *Id.* at 241–46, 103 S.Ct. 2317.

[¶ 21.] The American Heritage Dictionary defines "corroborate" as follows: "To support or confirm by new evidence; attest the truth or accuracy of." THE AMERICAN HERITAGE DICTIONARY 327 (2d ed 1985). In this case, the officer did nothing to verify that the anonymous caller's information was truthful or accurate. He did not even go to the scene of the alleged criminal activity. It is true that there were two anonymous calls made in this case, but the State acknowledges the calls may have been made by the same person, since they were, after all, anonymous. And while the officer did check the license plate numbers given to him, he never verified that the vehicles had actually been at the apartment. If the "corroboration" that occurred in this case is all we require, an unaccountable, anonymous caller can cause a completely innocent person's home to be raided by simply making up a provocative and entirely untruthful story.

[¶ 22.] The majority cites to *Titus*. In *Titus* the Colorado Supreme Court found that no probable cause existed where the license plate numbers given by an anonymous tipster were innocuous, and the majority distinguishes it on this basis. 880 P.2d at 151–52. However, the majority fails to mention that in *Titus*, the police also sent a police informant to the suspect's home to attempt to purchase drugs, at which time the suspect made a number of suspicious statements, the police performed surveillance of the home, and the officer determined the employment status of the suspect (self-employed). All of this was included in the officer's affidavit. *Id.* at 149–50. Despite all of this comparatively substantial corroborating evidence, the Colorado court did not believe that probable cause was established.

[¶ 23.] Contrary to the statements in the majority opinion, there was no genuine corroboration of the anonymous tips in this case, i.e. attestation of the truth or accuracy of the tips. Neither was there firsthand observation of the wrongdoing by the tipster or anyone else. Here, the tipster(s) did not claim to have witnessed drug possession, consumption, sales, or purchases.

[¶ 24.] By adopting the majority opinion, we have nearly absolved an officer of the duty to investigate crimes personally, and now allow an officer to rely almost exclusively on unknown, unnamed, and unaccountable tipsters. The majority cites little, if any, authority where probable cause was found under similar circumstances. Instead, the majority distinguishes a few cases where probable cause was not found. In the case before us, all

the officer did was check the license plate numbers given to him by the anonymous tipster(s). I disagree with the majority that this is enough. Simply put, this decision stretches the limits and reduces the requirements for probable cause to a point that puts even the most innocent and law abiding citizens at risk of a humiliating and demeaning intrusion of their homes.

[¶ 25.] Under the totality of the circumstances there was not a substantial basis for the issuing judge's finding of probable cause. I would affirm the trial court.