#24858-a-RWS

**2009 SD 11**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

v.

DOUGLAS DEAN GILMORE,                          Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JOSEPH NEILES
Judge

* * * *

LAWRENCE E. LONG
Attorney General

STEVEN R. BLAIR
Assistant Attorney General
Pierre, South Dakota                          Attorneys for plaintiff
                                              and appellee.

STEVE COWAN
Minnehaha County Public
 Defender's Office
Sioux Falls, South Dakota                     Attorneys for defendant
                                              and appellant.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 12, 2009

OPINION FILED **02/25/09**

#24858

SABERS, Retired Justice.

[¶1.] Douglas Gilmore appeals the denial of a motion to suppress evidence seized pursuant to a search warrant, arguing the search warrant was issued on insufficient probable cause. We affirm.

**FACTS**

[¶2.] On March 21, 2007, a "cooperating individual" (CI)[1] contacted the Minnehaha County Sheriff's Department and disclosed that he relapsed by using methamphetamine (meth) the previous weekend. In an attempt to remove any future temptation, the CI informed Detective Walsh, Detective Duprey, and Lieutenant Vandekamp of the residences at which he purchased meth the week prior. One of the residences was 4606 W. 16th Place in Sioux Falls. The CI indicated that the individual living at this residence from whom he purchased the meth was named "Doug." Law enforcement corroborated the information, conducted surveillance of the residence, and researched other information relating to Doug. Thereafter, Detective Walsh swore to an affidavit to secure a search warrant for the residence. The affidavit, in pertinent part, stated:

> 2. The CI directed your Affiant to 4606 W. 16th Place, the residence of "Doug," from whom the CI had purchased 1 gram of crystal methamphetamine for $120 on 03/19/2007. The CI described "Doug" as an older white male who didn't have a license or a vehicle. The CI stated that the CI's impression was that "Doug" might possibly have a drug connection in Colorado. Det. Duprey noted a yellow bicycle on the porch.
>
> 3. In checking the utilities account for 4606 W. 16th Place, your Affiant discovered that the account holder is Douglas D.

---

1. The CI, whose name was not disclosed in the affidavit, was not an anonymous source as law enforcement was aware of his name.

Gilmore. According to local police files, Douglas Dean Gilmore has the same phone number (605-571-7502) provided by the utility company, and a "Doug Gilmore" has telephoned 911 from this address.

4. On 03/23/2007, at approximately 1700 hours, Det. Duprey and your Affiant conducted surveillance of 4606 W. 16th Place. A vehicle was parked in the driveway with Colorado license plate 258FGF, registered to Nathan Greer. Your Affiant observed a tall white male exit the residence and retrieve an object from the vehicle. He then returned to the residence. Upon returning to the detective bureau, your Affiant found that Greer has an active arrest warrant for possession of drug paraphernalia, and your Affiant identified a photograph of Greer as the subject seen at the residence.

5. At approximately 1800 hours, your Affiant continued surveillance of the residence. Your Affiant observed Gilmore depart the trailer court on a yellow bicycle and pedal east on 12th Street. Your Affiant recognized Gilmore from a driver's license photograph. Between then and 2000 hours, Gilmore returned after a short term trip.

6. Your Affiant and Det. Duprey returned to 4606 W. 16th Place at approximately 2000 hours. A vehicle with South Dakota license plate 1VV876, a green Dodge minivan registered to Linda Mitzel, was parked in front of the residence. Mitzel [is] a known methamphetamine user and distributor who has convictions for distribution of a controlled substance and possession of a controlled substance. She has been charged with 9 felony narcotics offenses since 1995.

7. After approximately 20 minutes, Mitzel and a male, later identified as Jack Irvin Benney, exited the residence and left in the van. After committing a traffic violation (illegal right turn), the van was pulled over. Benney was eventually arrested for a warrant. During the stop your Affiant observed Mitzel making furtive movements in the front passenger seat of the van.[2]

---

2. At the suppression hearing, Detective Walsh admitted to telling local police to "find a reason to stop the van." The driver, Benney, provided that reason by failing to signal when changing lanes. Nothing illegal was seized as a result of this search of the van, which involved use of a drug dog, but these facts were not included in Detective Walsh's affidavit.

8. Gilmore has been associated with major drug dealers in the past three years. In 2006, Aaron Pope, who has pled guilty to federal narcotics violations, stated that one of his customers was Douglas Gilmore. Pope provided Gilmore's phone number (which matches the telephone number in paragraph 3). Some of their transactions took place at Gilmore's trailer, including one in which Pope obtained ½ pound of methamphetamine from his source. Between 12/11/2005 and 01/16/2006, Pope and Gilmore called each other approximately 150 times.

9. In 2006, Gilmore also had a number of telephone calls to Christina Cline, a methamphetamine distributor who pled guilty in federal court to conspiracy to distribute methamphetamine; Melissa Koenen, a known methamphetamine distributor; and Eric Lamont, a known methamphetamine distributor who has pled guilty to distribution of [a] controlled substance.[3]

10. In 2005, Gerald Roby, who pled guilty to federal narcotics charges, stated that one of his customers was Douglas Gilmore.

11. Gilmore has an active arrest warrant for a traffic violation.

12. Based on the aforementioned facts, your Affiant respectfully requests that a search warrant be issued for Gilmore, Douglas Dean, DOB: 12/06/1954, and his urine; and 4604 W. 16th Place, Sioux Falls, Minnehaha County, South Dakota; and unattached outbuilding; and any and all persons present at the time of execution of this warrant.

13. Your Affiant has observed short term traffic at the residence, and the CI in paragraph 1 stated that the CI had purchased crystal methamphetamine from Gilmore at the residence. Your Affiant knows that narcotics distributors will often have customers come to their residence to purchase the drugs, and that subjects found in a drug house will often have evidence of drug activity on their person including paraphernalia, drugs, and money.

---

3. Detective Walsh testified to personal knowledge of these events from working on the particular cases.

[¶3.] On March 28, 2007, Circuit Court Judge William Srstka issued a search warrant based upon Detective Walsh's affidavit. A search of the residence that same night resulted in the seizure of drug paraphernalia commonly connected to the distribution and/or ingestion of both marijuana and meth, some of which contained marijuana and/or meth residue. The search also produced a syringe containing meth and eleven Temazepam pills.[4]

[¶4.] Subsequently, Gilmore was charged with and indicted for two counts of possession of a controlled drug or substance in violation of SDCL 22-42-5, one count of possession of two ounces or less of marijuana in violation of SDCL 22-42-6, and one count of possession or use of drug paraphernalia in violation of SDCL 22-42A-3. Gilmore pleaded not guilty at his May 31, 2007 arraignment.

[¶5.] Gilmore moved to suppress the evidence collected during the search. The suppression hearing came before Circuit Court Judge Joseph Neiles on November 1, 2007. In addition to the information set forth in his affidavit, Detective Walsh testified that the CI had not previously been used by law enforcement as an informant, the CI was not paid for the information provided, and to Detective Walsh's knowledge, the CI had no criminal or drug history beyond some traffic offenses. Benney and Mitzel also testified, both indicating that they were not involved with any drug activity at the Gilmore residence, and that their visit to Gilmore's residence on March 23, 2007 lasted roughly an hour, rather than 20 minutes as stated in Detective Walsh's affidavit. Judge Neiles determined that

---

4. Temazepam, which is a benzodiazepine, is a Schedule IV controlled substance according to SDCL 34-20B-25.

Detective Walsh failed to substantiate the claims in his affidavit regarding short-term traffic at Gilmore's residence.[5] He concluded, independent of that information, the search was lawful and that the affidavit in support of the search warrant established probable cause for the search.

[¶6.]        A bench trial occurred on December 19, 2007, before Judge Neiles. During trial, the State disclosed the CI has a criminal record, including a 2003 conviction for second degree burglary in California. Furthermore, the CI was currently wanted in California for first degree burglary, forgery, and counterfeiting. Nevertheless, Judge Neiles accepted a stipulation[6] entered into by the parties and found Gilmore guilty of one count of possession of a controlled drug or substance and dismissed the other charges. Gilmore was sentenced to ten years in the state penitentiary, with all ten years suspended on several conditions, including 30 months probation and 180 days in jail with credit for three days. Gilmore appeals, raising the following issue:

> Whether Detective Walsh's affidavit in support of the search warrant was sufficient to establish probable cause for the search of Gilmore's home.

### STANDARD OF REVIEW

[¶7.]        This Court recently reiterated the standard of review for this issue:

---

5.    Judge Neiles declined to accept Detective Walsh's conclusion that there was short-term traffic at Gilmore's residence. The conclusion was based on two vehicles seen at the residence, for both of which the total lengths of their stays were unknown because surveillance commenced after the vehicles arrived.

6.    The parties stipulated that Gilmore was in possession of methamphetamine at the time the search warrant was executed.

> When considering the sufficiency of evidence supporting a search warrant we are required to "look 'at the totality of the circumstances to decide if there was at least a "substantial basis" for the issuing judge's finding of probable cause.'"

> > [O]ur inquiry is limited to determining whether the information provided to the issuing court in the warrant application was sufficient for the judge to make a "'common sense' determination that there was a 'fair probability' that the evidence would be found on the person or at the place to be searched." On review, we are limited to an examination of the facts as contained within the four corners of the affidavit. Furthermore, we review the issuing court's probable cause determination independently of any conclusion reached by the judge in the suppression hearing.

State v. Dubois, 2008 SD 15, ¶10, 746 NW2d 197, 202 (quoting State v. Helland, 2005 SD 121, ¶12, 707 NW2d 262, 268) (internal citations omitted). It is not the duty of this Court to review the lower court's probable cause determination de novo, but rather to examine the court's decision with "great deference." *Id.* ¶11, 746 NW2d 202-03 (citing *Helland*, 2005 SD 121, ¶17, 707 NW2d at 269); *see also* State v. Raveydts, 2004 SD 134, ¶8, 691 NW2d 290, 293; State v. Jackson, 2000 SD 113, ¶9, 616 NW2d 412, 416. This Court must "'draw every reasonable inference possible in support of the issuing court's determination of probable cause to support the warrant.'" *Dubois*, 2008 SD 15, ¶11, 746 NW2d at 203 (quoting *Helland*, 2005 SD 121, ¶17, 707 NW2d at 269).

[¶8.]     **Whether Detective Walsh's affidavit in support of the search warrant was sufficient to establish probable cause for the search of Gilmore's home.**

[¶9.]     Gilmore's argument that the affidavit lacked sufficient evidence to establish probable cause is based on three premises. First, the affidavit omitted a

prior criminal conviction and current criminal charges on the CI's record. Second, law enforcement failed to sufficiently corroborate the CI's information. Third, the trial court incorrectly concluded that the CI made statements against interest by disclosing the names of the individuals from whom meth was purchased the week prior. These errors, Gilmore argues, resulted in a search warrant not supported by probable cause.

[¶10.]     In the landmark case of *Illinois v. Gates*, 462 US 213, 103 SCt 2317, 76 LEd2d 527 (1983), the United States Supreme Court was confronted with a situation in which law enforcement received an anonymous letter informing them of the defendants' drug operation stationed in their home. The letter further provided explicit detail regarding a future trip the defendants would be making to obtain more drugs. These facts placed before the Court the issue whether probable cause for a search warrant can be based on an anonymous tip. In holding in the affirmative, the Supreme Court abandoned the two-pronged test derived from *Aguilar v. Texas*, 378 US 108, 84 SCt 1509, 12 LEd2d 723 (1964), and *Spinelli v. United States*, 393 US 410, 89 SCt 584, 21 LEd2d 637 (1969), for determining whether an informant's tip establishes probable cause to support a search warrant. The first prong of the *Aguilar-Spinelli* test examined the informant's "basis of knowledge," which required information about how the informant knew that evidence of illegal activity may be found in the premises to be searched. The strongest "basis of knowledge" information is firsthand, personal knowledge. The second prong focused on the informant's "veracity," or information supporting the reasons the informant should be believed. This prong is met with information

supporting the informant's "credibility" (tipster track record), or, in the alternative, "reliability" (statement against penal interest).

[¶11.]    Over the years, the lower courts misinterpreted *Aguilar* and *Spinelli*, causing a rigid, compartmentalized two-pronged test to evolve.  The *Gates* Court noted its discomfort with the newly-evolved test and explained that although "an informant's 'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant in determining the value of his report[,] . . . these elements should [not] be understood as entirely separate and independent requirements to be rigidly exacted in every case[.]"  *Gates*, 462 US at 230, 103 SCt at 2328.  "Rather," the Court continued, "they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place."  *Id.*

[¶12.]    The two-pronged *Aguilar-Spinelli* test was replaced by the totality of the circumstances approach, which the Court found to be "far more consistent with [its] prior treatment of probable cause[.]"  *Id.* at 230-31, 103 SCt at 2328.  Under this approach, the Court recognized that "probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules."  *Id.* at 232, 103 SCt at 2329.  South Dakota precedent specifies that "'[t]he standard of probable cause for the issuance of a search warrant is *a showing of probability of* criminal activity.'"  *Dubois*, 2008 SD 15, ¶11, 746 NW2d at 202 (quoting *Helland*, 2005 SD 121, ¶16, 707 NW2d at 269) (emphasis in original).

*1. Alleged flaws in affidavit*

       *(i) Insufficient corroboration*

[¶13.]      Gilmore first alleges two flaws in the affidavit sworn to the issuing court: first, failure by law enforcement to sufficiently corroborate the information provided by the CI, and second, omission of the CI's criminal history and current charges stemming from California. On March 21, 2007, the CI informed law enforcement of the following information: (1) On March 19, 2007, the CI personally purchased one gram of crystal meth for $120 from an older white male named "Doug," who resides in a trailer house located at 4606 W. 16th Place in Sioux Falls; (2) "Doug" used a bicycle rather than an automobile as a means of transportation; and (3) "Doug" may have a drug connection in Colorado.

[¶14.]      Detective Walsh corroborated most of this information. Gilmore complains about the manner of corroboration. Without citing any supporting authority, Gilmore argues that Detective Walsh should have: (1) requested the CI to identify Gilmore in person; (2) performed a trash pull to match Gilmore's name with the address; and (3) included information in the affidavit regarding investigations into the other tips provided by the CI. We disagree.

[¶15.]      Detective Walsh determined that, according to the utility records, Gilmore was the account holder for the residence located at the given address. Furthermore, the telephone number provided by the utility company matched the telephone number registered to Gilmore as indicated in law enforcement files. In addition, Gilmore, the telephone number, and the address were all linked using 911 records. There was also a bicycle located on the porch of the residence. During a

period of surveillance, Detective Walsh witnessed a man riding the bicycle and, based upon a driver's license photo, identified the rider as Gilmore. Lastly, Detective Walsh witnessed a vehicle with Colorado plates parked in front of Gilmore's residence. Upon investigating, he determined that the vehicle belonged to Greer, an individual with an active arrest warrant for possession of drug paraphernalia.

[¶16.] The one piece of information that could not be absolutely verified, because it occurred in the past, was the firsthand drug transaction in which the CI participated. Corroboration of an informant's tip by independent police work undoubtedly strengthens the value of the information. *Gates*, 462 US at 241, 103 SCt at 2334. However, not every piece of information provided by an informant requires corroboration. "'Because an informant is right about some things, he is more probably right about other facts . . . .'" *Gates*, 462 US at 244, 103 SCt at 2335 (quoting *Spinelli*, 393 US at 427, 89 SCt at 594 (White, J., concurring)). Gilmore claims that law enforcement should have conducted a controlled buy to substantiate the CI's tip; however, he cites no authority requiring the same. Detective Walsh nonetheless set forth in his affidavit several occurrences in which Gilmore *previously* associated with individuals convicted of drug crimes as well as instances in which Gilmore was *currently* associating with individuals known to be drug users and/or distributors. "To say that this coincidence of information was sufficient to support a reasonable belief of the officers that [Gilmore was involved in drug-related criminal activity] is to indulge in understatement." Ker v. California, 374 US 23, 36, 83 SCt 1623, 1631, 10 LEd2d 726 (1963).

[¶17.]    In *State v. Raveydts*, we held that verifying license plate numbers on vehicles parked outside an alleged drug dealer's residence, in addition to an informant's firsthand observation of wrongdoing, is sufficient corroboration if the license plate numbers belong to persons known to be involved in illegal drug activity.  2004 SD 134, ¶¶12-14, 691 NW2d at 295-96.  Corroboration by "personal 'surveillance [or] observation of unusual civilian or vehicular traffic at the address'" is not essential to a probable cause determination.  *See id.*  As explained, Detective Walsh did more than required under *Raveydts*.

[¶18.]    It is recognized that Detective Walsh's corroboration focused on innocent facts.  But "[c]ombinations of lawful and suspicious circumstances may lead to a justifiable inference of criminal activity."  State v. Belmontes, 2000 SD 115, ¶31, 615 NW2d 634, 642 (Konenkamp, J., concurring in result) ("[I]nnocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands." (quoting *Gates*, 462 US at 243 n13, 103 SCt at 2335 n13)).  Therefore, the corroboration sufficiently ensured the reliability of the information supplied by the CI.

*(ii) Criminal history omissions*

[¶19.]    Gilmore next contends that the affidavit was flawed because aspects of the CI's criminal history were intentionally omitted therein.  However, probable cause is not automatically vitiated just because an affidavit fails to include the informant's criminal record.  *Dubois*, 2008 SD 15, ¶13, 746 NW2d at 203 (citation omitted).  Rather, "'[a]n affidavit . . . purported to contain recklessly and

intentionally misleading information or material omissions is reviewed under the two-part analysis in *Franks v. Delaware*, 438 US 154, 98 SCt 2674, 57 LEd2d 667 (1978).'" *Id.* (quoting *Helland*, 2005 SD 121, ¶32, 707 NW2d at 273). "'First, [Gilmore] must show by a preponderance of the evidence that a . . . statement knowingly and intentionally, or with reckless disregard for the truth was [omitted] . . . by the affiant in the warrant affidavit.' Second, [Gilmore] must establish the omitted fact would have defeated probable cause." *Id.*

[¶20.]    Gilmore failed to address this test in his brief, but rather insisted that the omission of the CI's criminal history required rigorous scrutiny of the CI's tip. We continue to adhere to the two-part test stated above. The affidavit was silent as to the CI's 2003 second degree burglary conviction in California, and regarding current charges in California of first degree burglary, forgery, and counterfeiting. We are unable to locate any evidence in the record indicating that the omission was either knowing and intentional or a reckless disregard for the truth. Because the first prong is not met, we need not reach the second prong. Even if we did reach the second prong, we do not believe inclusion of the CI's conviction and outstanding charges would have changed the determination. Therefore, under the *Franks* test, Gilmore's argument fails.

#24858

*2. Alleged flaws in Judge Neiles's analysis*

[¶21.]     Gilmore's last attack is based on the claim of error in Judge Neiles's

analysis and conclusion that probable cause existed for Judge Srstka to issue the

warrant.[7]  In the memorandum opinion, Judge Neiles stated in part:

> Review of the affidavit reveals that police had information from
> a known informant, not an anonymous tipster, and that
> information was specific as to the location to be searched and
> the drugs to be found.  The tip was an admission against
> interest, in that the tipster was admit[ting] to a felony drug
> offense as part of the information provided.
>     Defense counsel spends some time talking about the test
> to be applied in evaluating informant tips, citing *Illinois v.
> Gates*[.]  However, counsel misstates when he claims "[i]n the
> present case, the detective knew full well that he needed to
> corroborate the statements of his anonymous informant."
> Unlike *Gates*, where police had received a letter from an
> unknown tipster about drug trafficking, here the police knew the
> name of the person that was providing the information.  He or
> she was not anonymous.  As pointed out in *Gates*, "if an
> unquestionably honest citizen comes forward with a report of
> criminal activity – which if fabricated would subject him to
> criminal liability – we have found rigorous scrutiny of the basis
> of his knowledge unnecessary.  ([C]itations omitted[.])
> Conversely, even if we entertain some doubt as to an informant's
> motives, his explicit and detailed description of alleged
> wrongdoing, along with a statement that the event was observed
> firsthand, entitles his tip to greater weight than might
> otherwise be the case."  Clearly the facts here fall squarely
> under this standard.  The tipster here was perhaps not the
> "unquestionably honest citizen" mentioned in *Gates* (he or she
> was a drug user that had 'slipped'), the explicit and detailed
> description of the sale of the drugs, the address, the name of the
> owner, the risk of criminal prosecution for making a false

---

7.     To support his position, Gilmore cites *State v. Sweedland*, 2006 SD 77, 721
       NW2d 409, in which we reversed the lower court's finding of probable cause
       for a vehicle search.  However, that determination was based on many factors
       notably absent in this case, including the fact that the informant lacked
       firsthand knowledge of the alleged criminal drug activity and, similarly, the
       informant was unable to provide an explicit and detailed account of the event.
       *Id.* ¶23, 721 NW2d at 415.

> statement to police all add up to the police and ultimately, the court, giving his tip greater credence [than] it might otherwise have been allotted. Then, when added to this tip is the information, some of it going back a couple of years, of the defendant's long association with drug transactions, and his recent association with persons known by the police to be involved in the recent past with drug transactions, all add up to probable cause to justify the issuance of the warrant.

[¶22.] Gilmore's primary argument rests on the premise that because the circuit court wrongly concluded the CI's statements regarding the drug purchase from Gilmore were statements against interest, the court placed undue weight on the veracity prong of its analysis. Statements against interest are generally accorded greater weight because they implicate the informant in criminal activity. Gilmore asserts, however, that these were not statements against interest because purchasing drugs, unlike possessing or ingesting drugs, is not illegal in South Dakota.[8] Gilmore's argument is flawed in three basic respects. First, nowhere in the memorandum opinion does Judge Neiles specifically state that the statement against interest was limited to *the purchase of drugs*. Rather, he broadly states, "The *tip* was an admission against interest, in that the tipster . . . admitted to a felony drug offense as part of the information provided." (Emphasis added.) That leads to the second point. Gilmore fails to recognize that the CI reported to law enforcement not only a purchase of meth from Gilmore, but also that the CI relapsed on the drug. The CI's relapse implies violations of South Dakota statutes by possessing and ingesting a controlled substance. *See* SDCL 22-42-5, 22-42-15.

---

8. Gilmore does not acknowledge that the CI's purchase and possession of the meth from Doug was simultaneous.

The CI also could have been prosecuted for a false report, if that were the case. The Supreme Court recognized:

> [I]f an unquestionably honest citizen comes forward with a report of criminal activity – which if fabricated would subject him to criminal liability – we have found rigorous scrutiny of the basis of his knowledge unnecessary. Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case.

*Gates*, 462 US at 233-34, 103 SCt at 2330 (internal citation omitted). No one claims the CI is an "unquestionably honest citizen," given his admitted drug relapse. However, the CI provided an explicit and detailed description of Gilmore's wrongdoing – an older individual named "Doug," who lived in a trailer house located at 4606 W. 16th Place in Sioux Falls, sold the CI one gram of crystal meth for $120 on March 19, 2007 – and because the CI was the buyer, the CI observed the event firsthand. Therefore, under *Gates*, the CI's tip is entitled to greater weight.

[¶23.] Gilmore's argument is flawed in a third respect in that strict adherence to the two-prong *Aguilar-Spinelli* test is no longer required. The *Gates* Court explained:

> [T]he "two-pronged test" directs analysis into two largely independent channels – the informant's "veracity" or "reliability" and his "basis of knowledge." There are persuasive arguments against according these two elements such independent status. Instead, they are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

*Id.* at 233, 103 SCt at 2329. Thus, if the information supporting the "basis of knowledge" prong is strong, the "veracity" prong need not be as well supported. Along the same lines mentioned above, the CI witnessed and actively participated in the criminal activity firsthand. Therefore, the "basis of knowledge" prong is supported by the best evidence available: firsthand knowledge. Even if we agreed with Gilmore's claim that the circuit court put too much weight on the veracity prong because it wrongly concluded that the purchase of an illegal substance is a violation of state law, we still fail to arrive at the conclusion that the affidavit was insufficient in establishing probable cause.

[¶24.] In *Raveydts*, we borrowed language from *Gates* in identifying two elements crucial to the probable cause inquiry when an informant's tip was involved. 2004 SD 134, ¶11, 691 NW2d at 295. "First, an 'explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the informant's] tip to greater weight than might otherwise be the case.'" *Id.* (quoting *Gates*, 462 US at 234, 103 SCt at 2330). "Second, the extent to which the tip is corroborated by the officer's own investigation is important." *Id.* ¶12 (citing *Gates*, 462 US at 244, 103 SCt at 2335). Both of these elements are met here. As mentioned before, the tip was explicit, detailed, and witnessed firsthand. Therefore, any deficiency in the "veracity" prong is compensated by the strong firsthand knowledge of the CI. Secondly, there was sufficient corroboration of the information by law enforcement thereby ensuring its reliability. Therefore, under our deferential standard of review, Judge Neiles's determination was appropriate.

**CONCLUSION**

[¶25.] "'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Gates*, 462 US at 231, 103 SCt at 2328 (quoting Brinegar v. United States, 338 US 160, 175, 69 SCt 1302, 1310, 93 LEd 1879 (1949)). We hold that the information set forth in the four corners of the affidavit established a "fair probability" that it was more likely than not that evidence of illegal drug activity would be found in Gilmore's residence.

[¶26.] We affirm.

[¶27.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.